USCA1 Opinion

 

 December 3, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1054 JAMES D. WILLIAMS, Plaintiff, Appellee, v. JOHN JONES d/b/a NICOLE ENTERPRISES, Defendant, Appellant. ____________________ ERRATA SHEET The opinion of this Court issued on December 3, 1993, is amended as follows: On page 24, the last sentence in the second paragraph "Costs _____ are awarded to plaintiff-appellee" should be corrected to read ___________________________________ "Costs are awarded to defendant-appellant." __________________________________________ UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1054 JAMES D. WILLIAMS, Plaintiff, Appellee, v. JOHN JONES d/b/a NICOLE ENTERPRISES, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ ____________________ Before Torruella, Selya and Cyr, Circuit Judges. ______________ ____________________ Marshall J. Tinkle, with whom Thompson, McNaboe, Ashley & ___________________ ____________________________ Bull was on brief for appellant. ____ Douglas C. Baston, with whom Howard & Bowie Law Offices was _________________ __________________________ on brief for appellee. ____________________ December 3, 1993 ____________________ CYR, Circuit Judge. In 1978, plaintiff-appellee James CYR, Circuit Judge ______________ Williams was injured as a result of a fall from the boom of a fishing vessel owned by his employer, defendant-appellant John Jones, d/b/a Nicole Enterprises (Jones). After Williams was diagnosed with a herniated disc, he filed a claim against Jones for compensation benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. 901-50.1 In March 1981, a Department of Labor (DOL) administrative law judge (ALJ) found that Williams had a "temporary total disability," see id. 908- ___ ___ (b), and ordered Jones to commence immediate payments to Williams in an amount equal to two-thirds of Williams's average weekly ____________________ 1The LHWCA is a comprehensive statutory scheme governing compensation for covered employees (e.g., longshoremen) due to ____ loss of earning capacity caused by injuries sustained while engaged in "maritime employment" upon the navigable waters of the United States, or upon designated lands adjoining those waters. See 33 U.S.C. 902, 903. Like state workers' compensation ___ statutes, the LHWCA contemplates a relinquishment of substantive rights by both parties; employers are liable for compensation to the disabled employee "irrespective of [the employers'] fault," id. 904, while employees' LHWCA administrative and judicial ___ remedies against their employer are exclusive, see id. 905; see _________ ___ ___ ___ also Potomac Elec. Power Co. v. Director, Office of Workers ____ _________________________ _____________________________ Compensation Programs, 449 U.S. 268, 281-82 (1980); Ceres Gulf v. _____________________ __________ Cooper, 957 F.2d 1199, 1205 (5th Cir. 1992). ______ After sustaining a work-related injury, a covered employee must provide written notice to his employer within 30 days from the date upon which he should have discovered his disability, in the exercise of reasonable diligence. See 33 U.S.C. 912. ___ Within 14 days of such notice, or after obtaining actual or constructive knowledge of the employee's disability, the employer must either (1) commence payments to the employee in an amount equal to two-thirds of the employee's "average weekly wages," see ___ id. 906, 908, 910, or (2) notify the United States Department ___ of Labor (DOL) that the employee's right to compensation will be contested, specifying the grounds. See id. 914(d). If the ___ ___ employer contests, the employee has one year from the date of his injury, or one year from the employer's last voluntary payment, to file a written claim with the DOL. See id. 913; see also 20 ___ ___ ___ ____ C.F.R. 702.201-702.286 (1993). 3 wage of $250, effective from October 1978.2 See id. 906, ___ ___ 910. Notwithstanding two successful appeals to the Benefits Review Board (BRB) by Jones, see id. 921(b),3 ultimately the ___ ___ BRB affirmed a compensation award in favor of Williams. We denied Jones's petition for judicial review in 1990. See id. ___ ___ 921(c). Notwithstanding the finality of the compensation award ____________________ 2Within ten days after the employee files an administrative claim, see supra note 1, the DOL must cause notice to be served ___ _____ on all interested parties, including the employer, see id. ___ ___ 919(b), and conduct all necessary investigations of the employee's claim, see id. 919(c); see also 20 C.F.R. 702.331- ___ ___ ___ ____ 702.351 (1993). At least ten days' notice of the 919 eviden- tiary hearing must be provided to all interested parties, by personal service or registered mail. Id. Section 919 evidentia- ___ ry hearings are conducted pursuant to the Administrative Proce- dures Act, 5 U.S.C. 554, by an ALJ. Within 20 days after the hearing, the ALJ must either reject the employee's claim, or issue a compensation order designating the extent of the em- ployee's "disability" (e.g., permanent total, temporary total, ____ permanent partial) and setting the amount of biweekly compensa- tion. The ALJ's compensation order becomes "effective" as soon as it is duly filed in the appropriate DOL office and notice of the filing is mailed to the employee and the employer. Id. ___ 919(e), 921(a). The employer's obligation to pay compensation to the employee commences on the date the ALJ's compensation order becomes "effective." 3See Williams v. Nicole Enters., Inc., 15 Ben. Rev. Bd. ___ ________ _____________________ Serv. 453 (1983); Williams v. Nicole Enters., Inc., 19 Ben. Rev. ________ ____________________ Bd. Serv. 66 (1986). "Effective" compensation orders remain non- "final" pending appeal. Once an ALJ's compensation order becomes "effective," the nonprevailing party has 30 days to appeal the order (or the ALJ's rejection of the claim) to the BRB, a three- member appellate panel within the DOL. See 33 U.S.C. 921(b). ___ The BRB must accept all ALJ factual findings supported by "sub- stantial evidence." Id. If the BRB affirms, the nonprevailing ___ party may petition for judicial review by the appropriate court of appeals, which will apply the same "substantial evidence" standard of review to the ALJ's factual findings, but otherwise has jurisdiction to affirm, modify, set aside, or enforce the __ _______ ALJ's compensation order. Id. 921(c). If no party appeals the ___ ALJ's order to the BRB, it becomes "final" 30 days after the parties are notified that it has been filed in the appropriate DOL office pursuant to 919(e). Id. 921(a). ___ 4 for LHWCA purposes, see supra note 3, Williams alleges that he ___ _____ has received only $450 in benefit payments from Jones to date. On August 7, 1992, Williams brought the present en- forcement action in federal district court, pursuant to LHWCA subsections 921(d) and (e): (d) If any employer or his officers or agents fails to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy com- missioner making the order, may apply for the enforcement of the order to the Federal dis- trict court for the judicial district in which the injury occurred . . . . If the __ ___ court determines that the order was made and _____ __________ served in accordance with law, and that such ___ employer or his officers or agents have failed to comply therewith, the court shall _____ _____ enforce obedience to the order by writ of _______ __ ____ __ injunction or by other proper process, manda- __________ __ tory or otherwise, to enjoin upon such person and his officers and agents compliance with the order. (e) Proceedings for suspending, setting aside, or enforcing a compensation order, whether rejecting a claim or making an award, shall not be instituted otherwise than as _____ ___ __ __________ _________ ____ __ provided in this section . . . . ________ 33 U.S.C. 921(d), (e) (emphasis added). Jones opposed the petition for enforcement on the grounds that "newly discovered" evidence revealed that Williams secured the award through perjury and fraud, and that the en- forcement petition was not served on Jones in compliance with Fed. R. Civ. P. 4. A magistrate judge recommended that the petition for enforcement be granted because Jones was precluded, as a matter of law, from pleading these defenses in an enforce- ment action brought pursuant to LHWCA section 921(d). Jones's 5 appeal from the district court order adopting the magistrate judge's recommended decision presents two important issues of first impression relating to the LHWCA's enforcement provisions. I. Insufficient Process and Service of Process. I. Insufficient Process and Service of Process. ___________________________________________ Jones concedes actual notice of the filing of the section 921(d) enforcement petition with the district court, but pleads insufficient process and insufficient service of process, see Fed. R. Civ. P. 12(b)(4), (5), based on Williams's admitted ___ failure to serve Jones pursuant to Fed. R. Civ. P. 4. See Durbin ___ ______ Paper Stock Co. v. Hossain, 97 F.R.D. 639, 639 (S.D. Fla. 1982) _______________ _______ ("Service of process is not effectual on an attorney solely by reason of his capacity as an attorney, [but] [t]he party must have appointed his attorney as his agent for service of pro- cess.") (collecting cases); cf. Fed. R. Civ. P. 5(b).4 ___ The Federal Rules of Civil Procedure apply in section 921(d) enforcement proceedings "except to the extent that matters of procedure are provided for in [the LHWCA]." Fed. R. Civ. P. 81(a)(6). As section 921(d) is silent on the procedures for filing, serving, and answering an enforcement petition in the ____________________ 4Rule 12(b)(4) and (5) defenses may be waived if not timely asserted. Marcial Ucin, S.A. v. SS Galicia, 723 F.2d 994, 996 __________________ __________ (1st Cir. 1983). Jones's first "response" to Williams's peti- tion, filed on August 21, 1992, did not contest service of process pursuant to Fed. R. Civ. P. 12(h)(1)(A). Five days later, however, Jones filed his answer and counterclaim, raising the insufficient process and service of process defenses in timely fashion. See Fed. R. Civ. P. 12(h)(1)(B) (defense not ___ waived if raised in "matter of course" Rule 15(a) amendment to responsive pleading within 20 days of initial answer). See ___ Glater v. Eli Lilley & Co., 712 F.2d 735, 738 (1st Cir. 1983). ______ ________________ 6 district court, Jones reasons that service of process was re- quired in accordance with Fed. R. Civ. P. 4 and 81(a)(6); without it, he argues, the district court did not obtain personal juris- diction over him. The magistrate judge rejected Jones's argument, citing Jourdan v. Equitable Equip. Co., 889 F.2d 637 (5th Cir. 1989), a _______ ____________________ case involving companion LHWCA section 918(a). Section 918(a) enforcement proceedings normally are used to enforce compensation awards which have become "effective" but are not yet "final"; that is, during the pendency of an appeal to the BRB from the ALJ's initial award, or from the BRB to the court of appeals. See supra notes 2 and 3. Within one year after an employer's ___ _____ default, the employee may apply to an ALJ for a "supplementary order" declaring the amount in default. The ALJ may not issue the supplementary order except "[a]fter investigation, [and] notice, and hearing." Even then, however, the supplementary order is not self-executing. Rather, the claimant, or the ALJ, must file a certified copy of the supplementary order with the appropriate federal district court, which "shall upon filing of _____ ____ ______ the copy enter judgment for the amount declared in default . . . if such supplementary order is in accordance with law."5 ____________________ 5LHWCA 918(a) provides, in pertinent part: (a) In case of default by the employer in the payment of compensation due under any award of compensation for a period of thirty days after the compensation is due and payable, the person to whom such compensation is payable may, within one year after such default, make application to the [ALJ] making the compensation order for a supplementary order declaring the amount of the 7 The Jourdan court held that the obligatory language of _______ section 918(a) evinced a clear congressional intent to dispense with the "service of process" requirements of Fed. R. Civ. P. 4 in a section 918(a) enforcement proceeding brought in the dis- trict court. The magistrate judge in the present case, analo- gizing from Jourdan, reasoned that, _______ [l]ike Section 918(a), Section 921(d) utiliz- es imperative language; upon certain findings the court "shall enforce." The only differ- ence is the lack of specificity regarding the ____ __ ___________ method for filing the "application." In either case, the court must make preliminary findings that amount to nothing more than a procedural review of the underlying process. __________ _______ Assuming there were no procedural errors at __ __________ ______ __ the administrative level, the court has no ___ ______________ _____ __ choice but to enforce the order. Again, the ______ court has no jurisdiction over the merits of the action. The aggrieved party would have ___ _________ _____ _____ ____ no additional opportunity to be heard even if __ __________ ___________ __ __ _____ ____ __ notice were provided according to the strict ______ ____ ________ _________ __ ___ ______ requirements of Rule 4. The logical conclu- ____________ __ ____ _ sion is that Section 921(d) is a summary ____________________ default. After investigation, notice, and hearing, as provided in section [919], the [ALJ] shall make a supplementary order, declaring the amount of the de- fault, which shall be filed in the same manner as the compensation order. In case the payment in default is an installment of the award, the [ALJ] may, in his discretion, declare the whole of the award as the amount in default. The applicant may file a certified copy of such supplementary order with the clerk of the Federal district court for the judicial district in which the employer has his principal place of business or maintains an office, or for the judicial district in which the injury occurred. ... Such supplementary order shall be final, and the court shall upon the filing of the copy enter judgment for the amount de- clared in default by the supplementary order if such supplementary order is in accordance with law. Review of the judgment so entered may be had as in civil suits for damages at common law. 33 U.S.C. 918(a). 8 proceeding, and that upon filing of appropri- ate documentation showing that the order is final, that it was properly served, and that the employer has failed to comply, the court should issue the order. Williams v. Jones, No. 92-0156-B, slip op. at 6 (D. Me. Oct. 27, ________ _____ 1992) (recommended decision) (emphasis added). Assuming, arguendo, that Jourdan is correctly decided, ________ _______ section 921(d) is insufficiently analogous to section 918(a) to bear the weight given it in the recommended decision below. Section 918(a)'s bifurcated enforcement mechanism requires ________ administrative notice to the employer, as well as an opportunity ______________ ______ to be heard, prior to the entry of any supplementary enforcement _____ order by the ALJ. See supra notes 2 and 5. Long before the ___ _____ employee ever files the ALJ's certified supplementary order with the district court, therefore, the procedural requirements of section 918(a) itself have assured that the employer was placed on notice of the impending judicial enforcement proceeding. The district court is expressly charged with determining whether "such supplementary order [was] in accordance with law." 33 U.S.C. 918(a). Thus, section 918(a) envisions an ancillary district court mechanism for enforcing supplementary enforcement orders entered by the ALJ. Arguably, at least, this is the sort of administrative alternative to service of process which would preempt the Rule 4 service of process requirement under Fed. Rule Civ. P. 81(a)(6).6 In contrast, however, no notice to the ____________________ 6Analogous Rule 81(a)(5), governing the applicability of the Civil Rules to NLRB proceedings, likewise illuminates the present inquiry. See Fed. R. Civ. P. 81(a)(5) ("in respects not covered ___ 9 employer is required prior to the commencement of a section 921(d) enforcement action in the district court. See supra p. 4. ___ _____ In addition, we detect no intimation, either in the statutory language or legislative history, that Congress con- templated a section 921(d) proceeding quite so summary as indi- cated in the recommended decision. Even assuming that a full panoply of equitable defenses is not available to an employer in a section 921(d) enforcement action, see infra pt. II, it is ___ _____ nonetheless clear that the employer may contest factual allega- tions upon which the section 921(d) enforcement petition neces- sarily depends,7 including the main issue whether the employer _______ ___ ________ ____________________ by [29 U.S.C. 159, 160] the practice in the district courts shall conform to these rules as far as applicable"). In contrast to LHWCA 921(d), however, the NLRB sections referenced in Rule 81(a)(5) contain detailed provisions relating to the filing of a petition to enforce an NLRB order. See 29 U.S.C. 160(e) ("Upon ___ filing of such a petition, the court shall cause notice thereof _____ to be served upon such person, and thereupon shall have jurisdic- _________ _____ ____ _________ tion of the proceeding and of the question determined therein, ____ __ ___ __________ and shall have power to grant such temporary relief or restrain- ing order as it deems just and proper . . . .") (emphasis added). 7Although clearly treated by the parties and the district court as a 921(d) action, Williams's petition for enforcement is an odd hybrid. Initially, Williams presented his petition for enforcement to the DOL. In a June 30, 1992 letter to Williams, the District Director of the DOL determined that the compensation order was "final," that it was made and administratively served "in accordance with law," and that Jones was in default on payments. Under 921(d), these administrative determinations were supererogatory. Unlike 918(a), 921(d) expressly re- serves such matters for resolution by the district court. See 33 ___ U.S.C. 921(d) ("If the court determines that the order was made __ ___ _____ __________ and served in accordance with law . . . .") (emphasis added). ______ Although the district court correctly noted that Jones did not contest these matters (e.g., the giving of notice as required in ____ the administrative proceedings under 919), the applicability of ______________ the Rule 4 service of process requirement is not made to depend, see Fed. R. Civ. P. 81(a)(6), upon whether the defendant-employer ___ received notice in the administrative proceeding, but whether ________ 10 is in default. Moreover, arguably at least, the employer might __ __ _______ be entitled to raise factual challenges relating to (1) the amount in default,8 (2) whether new evidence indicates that the initial compensation order was procedurally defective, or other- wise not "in accordance with law," or (3) employee conduct that might tilt the fundamental balance of equities in favor of judicial restraint. See infra note 18. Moreover, unlike the ___ _____ bifurcated process involved in a section 918(a) enforcement __________ proceeding, which presumes prior notice and hearing at the administrative level, section 921(d) constitutes the district court the employer's first and only forum for a full hearing of _____ ____ such factual disputes prior to the issuance of an injunctive ____________________ "matters of procedure are provided for in" the LHWCA, id. (empha- ________ ___ __ ___ sis added). Since there is no LHWCA provision governing service of process upon the defendant employer in a 921(d) judicial enforcement proceeding, the district court erred in determining that service of process in accordance with Fed. R. Civ. P. 4 and 81(a)(6) was not necessary. Moreover, although the DOL letter of June 1992 contained findings analogous to those required under LHWCA 918(a), see ___ supra note 5, it could not qualify as a 918 "supplementary _____ order," since (1) there is no record evidence that Jones contem- poraneously received the letter, or any notice of it, (2) the DOL did not conduct a 919 hearing prior to issuance of the letter, (3) the copy of the DOL letter filed with the district court enforcement petition was not "certified," and (4) Williams's district court petition specifically invokes subject matter jurisdiction under section 921(d) only. 8Williams conceded that Jones was making payments at the time of the district court order, but insisted that the enforce- ment petition sought to compel payment of the "arrearages" dating __________ from October 1978. The magistrate judge concluded that 921(d) differed from 918(a), in that it permits the enforcement of prospective compensation orders only, compelling future payments to be made as they come due but not recoveries of past due payments. Williams, slip op. at 3 (citing Henry v. Gentry ________ _____ ______ Plumbing & Heating Co., 704 F.2d 863 (5th Cir. 1983)). Since _______________________ Williams has not cross-appealed, we do not address this question. 11 enforcement order, with its attendant exposure to coercive contempt proceedings. The recommended decision observes that even without a formal Rule 4 service of process requirement the district court could notify an employer informally in those cases where the __________ court believed that an employee's petition for enforcement involved controverted factual matters. But of course such an approach could afford adequate safeguards only if the factual conflicts were apparent on the face of the employee's petition __ ___ ____ __ ___ __________ ________ for enforcement. Otherwise, there could be no assurance that the respondent-employer would have either notice or opportunity to assert a challenge. Thus, to construe Rule 81(a)(6) as excepting section 921(d) enforcement actions from the service of process requirements of Rule 4, merely because the employer did not interpose opposition to the enforcement petition, could expose employers to ex parte enforcement orders. __ _____ Finally, Williams suggests that requiring service of process in a section 921(d) enforcement proceeding could subvert the LHWCA goal of ensuring prompt compliance with compensation orders. Granting the premise of Williams's LHWCA policy argument in principle, whatever slight delay might be occasioned by requiring proper service of process in order to enable the court to obtain in personam jurisdiction over employers hardly seems 12 inappropriate, especially in light of the simplicity of the procedure.9 Sections 918(a) and 921(d) serve distinct roles in the LHWCA remedial scheme. Section 918(a) designedly affords injured employees a convenient, inexpensive, and expeditious mechanism for facilitating enforcement of "effective" compensation awards even before they have become "final". Congress anticipated the _____ severe financial hardships that could beset injured employees as a result of lengthy appeals. It therefore settled on the section 918(a) enforcement action as a simple means to compel prompt employer compliance with an enforcement award even though it might later be set aside on review. See, e.g., Tidelands Marine ___ ____ ________________ Serv. v. Patterson, 719 F.2d 126, 129 (5th Cir. 1983) ( 918(a) _____ _________ implements "a theme central to the spirit, intent, and purposes of the LHWCA"); Henry, 704 F.2d at 865.10 For some reason not _____ disclosed in the appellate record, however, Williams failed to ____________________ 9Other types of minor procedural delays have not foreclosed agency recognition of the applicability of the Civil Rules to the LHWCA by virtue of the gap-filling mandate in Fed. R. Civ. P. 81(a)(6). For instance, Civil Rule 6(e), which permits addi- tional time (3 days) for compliance after service by mail, has been held applicable in LHWCA enforcement proceedings. See, ___ e.g., Johnson v. Diamond M Co., 14 Ben. Rev. Bd. Serv. 694, 696 ____ _______ ______________ (1982) ("There is no provision in the Act excepting the applica- _________ tion of [Civil] Rule 6(e) . . . .") (emphasis added); see also ___ ____ Great Am. Indem. Co. v Belair, 160 F. Supp. 784, 785 (D. Conn. _____________________ ______ 1957) (same). 10Under the LHWCA, employers may recoup overpayments only as credits against compensation payments due the employee in the _______ future. See 33 U.S.C. 908(j), 914(j), 922; see also Ceres ___ ___ ____ _____ Gulf, 957 F.2d at 1201. Thus, if a compensation order is vacated ____ in its entirety, payments previously made are essentially un- recoverable. Id. ___ 13 invoke the convenient, prompt, and inexpensive enforcement mechanism established under section 918(a) throughout the ten- year period spanned by Jones's numerous appeals. Cf., e.g., ___ ____ Cassell v. Taylor, 243 F.2d 259, 260 (D.C. Cir. 1957) (one-year _______ ______ statute of limitations under 918(a) bars recovery on supplemen- tal order filed sixteen years after default on compensation award payments); supra note 5. Moreover, Williams chose not to cross- _____ appeal from the district court's ruling that section 921(d) could not be used to recover past-due payments. See supra note 8. The ________ ___ _____ avoidable and unexplained delay in Williams's efforts to recover these past-due compensation payments from Jones, however ill advised or unfortunate, does not permit disregard of the service of process requirements applicable to section 921(d) enforcement proceedings, particularly since compliance will entail no sig- nificant further delay.11 But cf. infra pt. II.B. ___ ___ _____ Furthermore, proper service of process is no empty procedural exercise where an employee seeks to obtain a district court enforcement order under section 921(d) which may lead to contempt proceedings against the employer for noncompliance. See ___ Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 103 _________________________ __________________ (1987) ("Before a court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must ____ ____________________ 11LHWCA 914(f) already provides a substantial disincentive to frivolous employer challenges to compensation awards designed to postpone payments to an injured employee. Before a compensa- tion order enters, payments more than 14 days overdue trigger 10% interest assessments. See 33 U.S.C. 914(e). Defaults in ___ payments following entry of a compensation order trigger 20% interest assessments. See id. 914(f). ___ ___ 14 be satisfied. '[S]ervice of summons is the procedure by which a __ _________ court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.'") (citing Mississippi Publishing Co. v. Murphree, 326 U.S. 438, ___________________________ ________ 444-45 (1946)) (emphasis added); Precision Etchings & Findings, ______________________________ Inc. v. LGP Gem, Ltd., 953 F.2d 21, 23-24 (1st Cir. 1992) (hold- ____ _____________ ing that actual notice of lawsuit is no substitute for substan- tial compliance with FRCP 4(d)(1) [requiring service on person of defendant, on suitable resident at defendant's dwelling, or on defendant's "agent"]; "a [] judgment entered by a court which lacks jurisdiction over the person of the defendant is void, and ____ may be set aside at any time pursuant to Fed. R. Civ. P. 60(b)- __ ___ ____ (4). Personal jurisdiction is established either by proper service of process or by the defendant's waiver of any defect in the service of process.") (emphasis added); Jardines Bacata, Ltd. _____________________ v. Diaz-Marquez, 878 F.2d 1555, 1559 (1st Cir. 1989) ("[I]n the ____________ ordinary course, the district court acquires jurisdiction over a defendant only by service of process . . . .") (emphasis added). ____ __ _______ __ _______ Accordingly, as we cannot find that Jones waived service of process, see supra note 4, we vacate the district court enforce- ___ _____ ment order, and remand for service of process pursuant to Fed. R. Civ. P. 4. II. Equitable Defenses and the State-law Counterclaim. II. Equitable Defenses and the State-law Counterclaim. _________________________________________________ Jones asserted two affirmative defenses and a state-law counterclaim based on allegations that Williams committed perjury before the ALJ in March 1980, and that, as a direct consequence, 15 the ALJ found, incorrectly, that "no laborious work" had been performed by Williams after October 1978. At the October 23, 1992 hearing before the magistrate judge, Jones proffered three affidavits from individuals who had accompanied Williams on numerous clamming and lobstering expeditions between October 1978 and March 1981. These affidavits attest that Williams engaged in the very types of heavy labor and lifting explicitly disclaimed in his testimony before the ALJ in 1980. Jones contends that the identity of the affiants could not have been discovered earlier in the exercise of reasonable diligence, since Jones only learned of their existence through a "chance conversation" in August or September of 1992. With respect to the affirmative defenses, Jones re- quested alternative forms of equitable relief: (1) denial of the enforcement order on the ground that a party who obtains a compensation award through fraud is not entitled to its enforce- ment by injunction, or (2) a temporary stay of the section 921(d) enforcement action pending administrative relief from the DOL. With respect to the state-law counterclaim, see Me. Rev. Stat. ___ Ann. tit. 14, 870 (1992) (damages action for perjury), Jones requested compensatory and punitive damages. The district court held that it had no "jurisdiction" hence no discretion under LHWCA section 921(d) to refuse to enforce the compensation order, except on the two grounds enumerated in the LHWCA, neither of which was contested by Jones; namely, that Jones was not in default or that the compensation 16 order was not made and served "in accordance with law."12 On related grounds, the district court refused to exercise pendent jurisdiction over Jones's state-law counterclaim. See United ___ ______ Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). The recommended ____________ _____ decision did not address the request for a temporary stay of the section 921(d) enforcement proceedings. On appeal, Jones contends that the district court viewed its equitable powers under section 921(d) too narrowly. See Restatement (Second) of Judgments 70, cmt. a (1982) (a ___ court of equity will not enforce a judgment obtained by fraud). Although the district court may have painted with too broad a brush, see, e.g., infra notes 14 and 18, we think its core ___ ____ _____ conclusions were nonetheless sound. ____________________ 12The magistrate judge principally relied on Thompson v. ________ Potashnick Constr. Co., 812 F.2d 574 (9th Cir. 1987), and Mar- _______________________ ____ shall v. Barnes & Tucker Co., 432 F. Supp. 935 (W.D. Pa. 1977). _____ ____________________ In Thompson, the Ninth Circuit broadly stated that a district ________ court's role in a 921(d) proceeding is limited to screening for procedural defects in the DOL proceedings and that "the district court has no jurisdiction over the merits of the litigation." ______ Thompson, 812 F.2d at 576 (emphasis added). The Thompson court ________ ________ was not asked to consider the sufficiency of service of process in the district court proceeding. In support of its position, the Ninth Circuit cited Mar- ____ shall, which looked to recent legislative history for guidance. _____ Prior to 1972, the district court had served both as an appellate court, reviewing the ALJ's compensation orders, and as the forum ___ in which the employee could seek enforcement of a final compensa- tion order. In 1972, Congress established the BRB, which assumed the appellate role previously performed by the district court. See H.R. Rep. 1441, 92d Cong., 2d Sess. 12 (1972), reprinted in ___ _________ __ 1972 U.S.C.C.A.N. 4709. The Marshall court concluded that ________ Congress intended, by its LHWCA amendments in 1972, to withdraw district court jurisdiction to consider any issue relating to the underlying merits of compensation orders. Marshall, 432 F. Supp. ______ ________ at 937. 17 A. Equitable Power to Refuse Injunctive Enforcement. A. Equitable Power to Refuse Injunctive Enforcement. ________________________________________________ An enforcement order under LHWCA section 921(d) may take the form of a writ of injunction, a traditional equitable remedy which may expose the enjoined party to the district court's coercive contempt powers. Accordingly, fraud and "un- clean hands" historically have been regarded as valid equitable defenses to injunctive relief, Loglan Inst., Inc. v. Logical ____________________ _______ Language Group, Inc., 962 F.2d 1038, 1042 (Fed. Cir. 1992), and ____________________ absent a controlling statute a federal court is presumed to possess the broad discretion and equitable power to configure its remedy to suit the needs of the case. Even in the context of congressionally created injunctive remedies, the Supreme Court has said that "[u]nless a statute in so many words, or by a __ __ _ necessary and inescapable inference, restricts the court's _________ ___ ___________ _________ jurisdiction in equity, the full scope of that jurisdiction is to ____ _____ be recognized and applied." Porter v. Warner Holding Co., 328 ______ ___________________ U.S. 395, 398 (1946) (emphasis added). See Weinberger v. Romero- ___ __________ _______ Barcelo, 456 U.S. 305, 313 (1982) ("[W]e do not lightly assume _______ that Congress has intended to depart from established [equity] principles.").13 ____________________ 13See also Hecht Co. v. Bowles, 321 U.S. 321, 329 (1944) ___ ____ _________ ______ ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessi- ties of the particular case. Flexibility rather than rigidity has distinguished it."); NLRB v. P*I*E Nationwide, Inc., 894 F.2d ____ ______________________ 887, 892 (7th Cir. 1990) (contrasting FTC orders, which are self- executing, with NLRB orders as to which Congress has interposed the district court as an independent enforcement arbiter, recog- nizing that the "potential severities of contempt" counsel "a complementary power of equitable restraint and forbearance"); cf. ___ Pyrodyne Corp. v. Pyrotronics Corp., 847 F.2d 1398, 1402 (9th _______________ __________________ 18 Under this rubric, the first question we confront is whether the LHWCA deprives the district court of its traditional discretionary powers to withhold equitable relief for the en- forcement of a compensation award obtained through an employee's fraud.14 Since section 921(d) contains no explicit delimita- ____________________ Cir.) (noting that owner of incontestable mark under Lanham Act "generally entitled to injunctive relief," but if equitable defenses are interposed, "the grant of injunctive relief is not a ministerial act flowing as a matter of course"), cert. denied, _____ ______ 488 U.S. 968 (1988). 14Marshall, 432 F. Supp. 935, relied on below, as well as by ________ the Ninth Circuit in Thompson, see supra note 12, offers only ________ ___ _____ limited guidance. In Marshall, the employer attempted to liti- ________ gate core factual issues (e.g., LHWCA coverage and statute of ____ limitations) for the first time in a 921(d) proceeding, having ___ ___ _____ ____ failed to raise them before the ALJ, or to appeal the compensa- tion order to the BRB. Id. at 937. The Marshall court correctly ___ ________ relied on the fact that, by its amendments to the LHWCA in 1972, Congress unequivocally divested the district court of all appel- late functions relating to ALJ compensation orders. But Marshall ________ did not involve the more difficult problems posed by newly discovered evidence of fraud. Arguably, at least, successful invocation of an equitable defense to enforcement would not work __ ___________ an appellate affirmance, modification, or vacation of the under- _________ lying compensation order, but merely a refusal to deploy the equitable powers of the court in aid of a judgment fraudulently obtained. Thus, Marshall's admonition that the district court's ________ function is reduced to "screening compensation orders for proce- dural defects" does not purport to preclude exercise of the court's traditional discretionary power to grant or withhold equitable relief. See infra note 18. ___ _____ 19 tion of the district court's equitable powers,15 we must look to the LHWCA's remedial framework as a whole. The LHWCA affords Jones an adequate remedy for redress- ing any fraud alleged in the affirmative defense. Eschewing conventional res judicata principles, section 922 allows an ___ ________ employer to request the ALJ to reconsider the case where there has been a "change of conditions" or "mistake of fact" warranting modification or suspension in compensation payments. See 33 ___ U.S.C. 922; see also 20 C.F.R. 702.373; Hudson v. Southwest- ___ ____ ______ __________ ern Barge Fleet Servs., Inc., 16 Ben. Rev. Bd. Serv. 367, 369 _____________________________ (1984) (holding that 922 was "intended by Congress to displace traditional notions of res judicata") (citing Banks v. Chicago ___ ________ _____ _______ Grain Trimmers Ass'n, 390 U.S. 459 (1968)).16 "[F]acts relat- _____________________ ing to the nature and extent of a claimant's disability typically ____________________ 15The magistrate judge's reliance on the "imperative lan- guage" of 921(d) could not fully resolve the issue. See supra ___ _____ pp. 7-8. Section 921(d)'s language "shall enforce" does not call for a blanket preemption of the district court's tradi- tional equitable powers. See, e.g., Hecht, 321 U.S. at 329 ___ ____ _____ (holding that the phrase "'shall be granted' [in the injunctive enforcement provision of the Emergency Price Control Act of 1942] is less mandatory than a literal reading might suggest"; "[w]e cannot but think that if Congress had intended to make such a drastic departure from the traditions of equity practice, an unequivocal statement of its purpose would have been made"). 16Section 922 may be invoked before or after a compensation award is entered. See, e.g., Craig v. United Church of Christ, ___ ____ _____ _______________________ 13 Ben. Rev. Bd. Serv. 567, 568-69 (1981). Although 922 is subject to a one-year limitations period, a defaulting employer may restart the tolling period at any time by making a single compensation payment. See 33 U.S.C. 922 (modification award ___ can be filed "at any time prior to one year after date of last payment of compensation"). Thus, recourse to 922 would appear to afford more flexibility for setting aside a fraudulent award than is provided under Fed. R. Civ. P. 60(b)(3). 20 are the subject of modification proceedings." Williams v. ________ Geosource, Inc., 13 Ben. Rev. Bd. Serv. 643, 645 (1981). "The _______________ factfinder [ALJ] has broad discretion to correct mistakes of fact, whether they be demonstrated by new evidence, cumulative ___ ________ evidence, or further reflection upon the evidence initially submitted." Id. (emphasis added). The overarching criterion for ___ reopening a compensation award under the LHWCA is whether reexam- ination would serve the "interests of justice." O'Keeffe v. ________ Aerojet-General Shipyards, Inc., 404 U.S. 254, 255-56 (1971). ________________________________ Perjured testimony resulting in an erroneous finding of fact concerning the nature or extent of an employee's disability would seem to come squarely within the realm of a "mistake of fact." On October 14, 1992, days before the recommended decision issued in this case, Jones filed a petition for modifi- cation pursuant to LHWCA section 922.17 In these circumstanc- es, and against this legislative framework, we think there are at least two sound reasons for not inferring a congressional inten- tion to dedicate two forums to the task of assessing alleged "mistakes of fact" relating to an employee's testimony before the ALJ. First, where newly discovered evidence of fraud implicates the evidentiary basis for an employee's compensation claim, the ____________________ 17Section 922 is not the only antidote for fraud under the LHWCA, which likewise authorizes the imposition of criminal penalties (fine and imprisonment) against "[a]ny person who willfully makes any false or misleading statement or representa- tion for the purpose of obtaining any benefit or payment under this Act." 33 U.S.C. 931. In addition, costs may be awarded to the opposing party in proceedings brought on claims or orders "without reasonable ground." Id. 926. ___ 21 LHWCA discloses a decided preference for utilizing the DOL's in- house expertise in resolving the dispute. See, e.g., Crowell v. ___ ____ _______ Benson, 285 U.S. 22, 46 (1932) (the LHWCA provides "a prompt, ______ continuous, expert and inexpensive method for dealing with a class of questions of fact which are peculiarly suited to exami- __________ ______ nation and determination by an administrative agency specially assigned to that task") (emphasis added); cf. Youghiogheny & Ohio ___ ___________________ Coal Co. v. Vahalik, 970 F.2d 161, 162 (6th Cir. 1992) ("the _________ _______ benefits of agency expertise become irrelevant" under the LHWCA only after "claim determination" is complete).18 ____ _____ Under either section 921(d) or 922, the factfinder would be required to decide: (1) whether Jones could have discovered the putative fraud earlier, in the exercise of due diligence; (2) whether the affidavits proffered by Jones, togeth- er with the record evidence in the case before the DOL, credibly suggest that Williams misrepresented his physical capacities and activities during the relevant period; and (3) whether the putative perjury was sufficiently material to undermine the ALJ's finding of temporary total disability. See General Dynamics ___ _________________ Corp. v. Director, Office of Workers' Compensation Programs, 673 _____ __________________________________________________ F.2d 23, 25 (1st Cir. 1982) (in reopening case, ALJ "must balance the need to render justice against the need for finality in ____________________ 18On the other hand, while we have no occasion to take a position in this case, some equitable defenses (e.g., laches, ____ estoppel), to the extent premised on employee conduct postdating __________ the compensation order, might require resolution of factual issues not peculiarly suited to agency expertise. Cf. supra note ___ _____ 14. 22 decisionmaking," and justice is not necessarily served where the employer "could have presented his side of the case at the first hearing . . . ."); see also McCord v. Cephas, 4 Ben. Rev. Bd. ___ ____ ______ ______ Serv. 224, 225 (1976) (employer not entitled to modification if it exhibits a bad faith effort to relitigate issues ad nauseam). __ _______ We think the DOL is better positioned to address such issues in these circumstances. Second, section 922 modification rulings are appealable to the BRB and to the court of appeals. See 33 U.S.C. 921(b), ___ (c); O'Loughlin v. Parker, 163 F.2d 1011, 1013 (4th Cir. 1947) __________ ______ (ALJ's decision to reopen under section 922 is reviewed for abuse of discretion). Similarly, an employer would be allowed an appeal from a district court decision which discounted the employer's equitable defenses and directed enforcement of a compensation award. To allow the section 922 and the section 921(d) proceedings to go forward simultaneously would open up the possibility of inconsistent rulings on the fraud claim, which ultimately would have to be resolved by the court of appeals in either event. As we can discern no good purpose for such a needless duplication of administrative and judicial effort, we conclude that LHWCA section 921(d), viewed in broad context, gives rise to the "inescapable inference," see Porter, 328 U.S. at 398, that ___ ______ Congress did not intend the type of fraud defense here presented by Jones to be adjudicated by the district court but by the DOL. 23 B. Stay of Enforcement. B. Stay of Enforcement. ___________________ The remaining question is somewhat narrower: may the district court in a section 921(d) proceeding temporarily enjoin enforcement of a compensation order pending administrative resolution of an employer's petition for modification under section 922?19 Jones contends that he will be harmed irreparably absent a stay of the section 921(d) enforcement proceeding, because the compensation payments he is compelled to make prior to any section 922 modification order would not be recoverable. See supra note 10. ___ _____ Only two LHWCA provisions explicitly allow stays of "effective" compensation orders. See 33 U.S.C. 921(b) (stay ___ pending appeal to BRB), 921(c) (stay pending appeal from BRB to court of appeals), thus underscoring the strong LHWCA policy favoring prompt compensation payments even though the employee's entitlement to disability benefits remains in genuine dispute. Stays pending administrative and judicial review are available only on a showing of "irreparable injury." See Henry, 704 F.2d ___ _____ at 865. It is not enough that the employer demonstrate that interim payments would be unrecoverable absent a stay, nor that the employer is experiencing financial difficulty in making payments. Edwards v. Director, Office of Workers' Compensation, _______ _________________________________________ ____________________ 19We address this issue in the interests of judicial econo- my. It is possible, even likely, that Jones's 922 petition will have been acted upon by the DOL before Jones has been served with process pursuant to Civil Rule 4 following remand to the district court. If not, it seems quite likely that Jones would renew his request for a stay of the 921(d) enforcement proceed- ing. 24 932 F.2d 1325, 1329 (9th Cir. 1991). "Irreparable injury" will be found only in extraordinary circumstances. Id. _____________ ___ Unlike the minimal time delays required to effect proper service of process, see supra pt. I, a stay of section ___ _____ 921(d) enforcement proceedings while an employer pursues a modification ruling from the DOL (and, perhaps, pending appellate review) threatens a lengthy delay in the previously ordered compensation payments to the employee. Therefore, under the "inescapable inference" standard established in Porter, 328 U.S. ______ at 398, we must conclude that the LHWCA divests the district court of the equitable power to defer its entry of a section 921(d) enforcement order pending the outcome of a section 922 modification proceeding unless the employer first establishes "irreparable injury." As we have noted, Jones's answer did not allege facts sufficient to establish irreparable injury, nor does the record suggest a basis for such a showing. Thus, the magis- trate judge did not err in failing to act on the request for a temporary stay. III. Conclusion. III. Conclusion. __________ The district court order directing enforcement of the compensation order pursuant to LHWCA section 921(d) must be vacated due to lack of compliance with the service of process requirements imposed by Fed. R. Civ. P. 4 and 81(a)(6). The case must be remanded to permit Williams to effect service of process upon Jones. At such time as service of process is effected, Jones should be permitted to submit for district court consider- 25 ation any order obtained in the LHWCA section 922 modification proceeding, failing which the district court may reinstate the section 921(d) enforcement order previously entered. The enforcement order is vacated and the case is The enforcement order is vacated and the case is _______________________________________________________ remanded to permit service of process and for further proceedings remanded to permit service of process and for further proceedings _________________________________________________________________ in accordance herewith. Costs are awarded to defendant-appel- in accordance herewith. Costs are awarded to defendant-appel- _______________________ ______________________________________ lant. lant. _____ 26